# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO.'S MPL4796207.21 and MPL4796207.22<br><br>Plaintiff,<br><br>v.<br><br>KIM E. ANDERSON as Co-Trustee of THE HARVEY AND DELORES IVERSON TRUST<br><br>Defendant. | Case No.<br><br>Jury Demand |

## COMPLAINT FOR DECLARATORY JUDGMENT, RESCISSION AND OTHER RELIEF

Plaintiff, Certain Underwriters at Lloyd's London Subscribing to Policy No.'s MPL4796207.21 and MPL4796207.22 ("Underwriters"), for their Complaint for Declaratory Judgment, Rescission and Other Relief against Defendant, Kim E. Anderson as Co-Trustee of The Harvey and Delores Iverson Trust ("Trustee Anderson," defined *infra*), state as follows:

## NATURE OF THE COMPLAINT

1.  This is a Complaint for declaratory judgment, rescission and other relief relating to the parties' respective rights and obligations under liability insurance policies that Underwriters issued to Trustee Anderson (the "Policies," defined *infra*).

2.  Trustee Anderson has demanded that Underwriters provide her with a defense and indemnity in connection with an underlying lawsuit (the "Underlying Suit," defined *infra*) brought against her and others in her capacity as trustee of the Harvey and Delores Iverson Trust (the "Trust," defined *infra*).

3. Underwriters dispute that they have any obligation to defend and/or indemnify Trustee Anderson under the Policies issued to her in connection with the Underlying Suit and are entitled to the equitable remedy of rescission of the Policies set forth in Idaho Code § 41-1811.

## PARTIES, VENUE AND JURISDICTION

4. Certain Underwriters at Lloyd's, London Subscribing to Policy Nos. MPL4796207.21 and MPL4796207.22 are certain syndicates and "names" based in London, England, who are underwriters of certain Trustees Professional Liability Policies.

5. Upon information and belief, Kim E. Anderson is an adult residing in Boise, Idaho, Ada County.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1), because Trustee Anderson resides in this district, a substantial part of the events giving rise to the parties' dispute occurred here and the Policies were delivered to Trustee Anderson in this district.

7. This Court has personal jurisdiction over Trustee Anderson because she resides in this district and transacts substantial business in Boise, Idaho, and, upon information and belief, she has her principal place of business therein.

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because Underwriters and Trustee Anderson are citizens of different foreign states and the amount in controversy exceeds $75,000.

9. This Court has jurisdiction to issue a declaratory judgment pursuant to Federal Rule 57 and 28 U.S.C. § 2201.

10. An actual, immediate and justiciable controversy exists among the parties regarding the existence and scope of coverage under the Policies with respect to the Underlying Suit.

## THE APPLICATION AND THE POLICIES

11. Before the Policies were issued, Trustee Anderson was required to fill out: (i) a Professional Liability Errors and Omissions Insurance Trustees Supplemental application; and (2) a Trustees Supplemental Application. (*See* **Exhibits A** and **B**, respectively)

12. In the Professional Liability Errors and Omissions Insurance application dated April 6, 2021, Trustee Anderson was asked the following question:

> 21. Does the person to be insured have knowledge or information of any act, error or omission which might reasonably be expected to give rise to a claim against him/her?

(*See* **Ex. A**.)

13. In response to Question 21, Trustee Anderson answered "No." (*Id.*)

14. In the Professional Liability Errors and Omissions Insurance application dated April 6, 2021, Trustee Anderson was separately asked the following question:

> 22. After inquiry have any claims been made against any proposed Insured(s) during the past five (5) years?

(*Id.*)

15. In Response to Question 22, Trustee Anderson answered "No." (*Id.*)

16. The Professional Liability Errors and Omissions Insurance application dated April 6, 2021 further states that "It is understood and agreed that with respect to questions 20, 21, and 22, that if such knowledge or information exists any claim or action arising therefrom is excluded from this proposed language. (*Id.*)

17. Based on the representations made in the Professional Liability Errors and Omissions Insurance application, Underwriters issued the following liability insurance policies to Trustee Anderson:

| Policy Number | Policy Period |
|---|---|
| MPL4796207.21 | April 20, 2021 to April 20, 2022 |
| MPL4796207.22 | April 20, 2022 to April 20, 2023 |

(*See* Policy Nos. MPL4796207.21 and MPL4796207.22, attached hereto as **Exhibits C** and **D**.)

## THE UNDERLYING SUIT

18.   On May 12, 2022, Harvey Jeffery Iverson ("Jeff Iverson") filed a complaint against (i) Kim E. Anderson, individually ("Anderson"), (ii) Kim E. Anderson, as co-trustee of The Harvey and Delores Iverson Trust ("Trustee Anderson"), (iii) Kim E. Anderson, as trustee of The Harvey and Delores Iverson Family Trust, and (iv) Harvey J. Iverson, individually and as co-trustee of The Harvey and Delores Iverson Trust ("Harvey Iverson") in the District Court of the Fourth Judicial District of the State of Idaho, in and for the County of Valley, bearing Case No. CV 43-22-00145 (the "Underlying Suit"). (*See* Underlying Complaint, attached hereto as **Exhibit E**.)

19.   Upon information and belief, the complaint in the Underlying Suit alleges that The Harvey and Delores Iverson Trust (the "Trust") was a revocable trust created on or around March 3, 1995 by Harvey and Delores Iverson. (*Id*. at ¶ 7.)

20.   Upon further information and belief, the complaint in the Underlying Suit alleges that grantor and co-trustee Delores Iverson died on March 19, 2019. (*Id*. at ¶ 11.)

21.   Upon further information and belief, the complaint in the Underlying Suit alleges that at the time of Delores' death, Harvey and Delores Iverson resided at and jointly owned the real property located at 12848 Morning Drive, Donnelly, Idaho 83615 (the "Property"). (*Id*. at ¶ 12.)

22. Upon further information and belief, the complaint in the Underlying Suit alleges that all provisions of the Trust became irrevocable upon the death of Delores Iverson. (*Id*. at ¶ 14.)

23. Upon further information and belief, the complaint in the Underlying Suit alleges that Trustee Anderson and Harvey Iverson were co-trustees of the Trust upon the death of Delores Iverson. (*Id*. at ¶ 18.)

24. Upon further information and belief, the complaint in the Underlying Suit alleges that Trustee Anderson and co-trustee Harvey Iverson were required to split the trust estate into two shares or "sub-trusts," consisting of: (i) the Survivor's Trust, which consists of all property comprising any part of the trust estate which is not includable in the gross estate; and (ii) the Family Trust, which consists of so much of the trust estate as is not included in the Survivor's Trust. (*Id*. at ¶¶ 19-25.)

25. Upon further information and belief, the complaint in the Underlying Suit alleges that Trustee Anderson and co-trustee Harvey Iverson failed to properly split the trust estate and properly fund the sub-trusts, including the Family Trust. (*Id*. at ¶ 26.)

26. Upon further information and belief, the complaint in the Underlying Suit alleges that Trustee Anderson is the beneficiary of the First Remainder Share of the Family Trust and that Jeff Iverson is the beneficiary of the Second Remainder Share. (*Id*. at ¶ 28.)

## The Trust Dispute

27. Upon information and belief, the complaint in the Underlying Suit alleges that following Delores Iverson's death, Trustee Anderson filed a *Registration of Trust* in the District Court of the Fourth Judicial District of the State of Idaho, in and for the County of Valley, bearing Case No. CV43-20-00179. (*Id*. at ¶ 29.)

28. Upon further information and belief, Trustee Anderson and co-trustee Harvey Iverson filed multiple petitions relating to Trustee Anderson's position as co-trustee, her powers and duties and co-trustee Harvey Anderson's actions related to the Property (the "*Trust Dispute* Matter"). (*Id*. at ¶ 30.)

29. Upon further information and belief, on August 10, 2020, the court entered a stipulated Order Granting Petition for Affirmation of Trust in the *Trust Dispute* Matter, directing therein, in pertinent part, that Trustee Anderson and co-trustee Harvey Iverson had the powers, rights, duties, and obligations as co-trustees to jointly administer the Trust in accordance with the Trust documents. (*Id*. at ¶ 31.)

30. Upon further information and belief, the complaint in the Underlying Suit alleges that, thereafter, the *Trust Dispute* Matter solely concerned the Property. (*Id*. at ¶ 32.)

31. Upon further information and belief, the complaint in the Underlying Suit alleges that, despite the Trust's requirement that the trust estate be split and used to fund the sub-trusts, Trustee Anderson and co-trustee Harvey Iverson entered into settlement discussions in the *Trust Dispute* Matter regarding their respective proposals to sell the Property and distribute its proceeds. (*Id*. at ¶ 33.)

32. Upon further information and belief, the complaint in the Underlying Suit alleges that, throughout the settlement discussions in the *Trust Dispute* Matter, Trustee Anderson and co-trustee Harvey Iverson affirmed the necessity of a TEDRA agreement, as the Trust was irrevocable upon Delores Iverson's death. (*Id*. at ¶ 34.)

33. Upon further information and belief, the complaint in the Underlying Suit alleges that the settlement discussions in the *Trust Dispute* Matter affirmed that all beneficiaries,

including Harvey Iverson, Trustee Anderson, Jason Iverson and Jeff Iverson, would need to sign-off on the TEDRA agreement, as they were all beneficiaries of the Trust. (*Id*. at ¶ 35.)

34. Upon further information and belief, the complaint in the Underlying Suit alleges that, despite these discussions, all of the beneficiaries of the Family Trust, and in particular, Jason and Jeff Iverson who stood to inherit the Trust Estate upon Harvey Iverson's death, were not included in the settlement discussions. (*Id*. at ¶ 36.)

35. Upon further information and belief, the complaint in the Underlying Suit alleges that despite no TEDRA agreement being in place, Trustee Anderson maintained a final agreement had been reached, and therefore, she filed a Petition for Enforcement of Parties' Agreement in the *Trust Dispute* Matter on or about November 19, 2020. (*Id*. at ¶ 40.)

36. Upon further information and belief, the complaint in the Underlying Suit alleges that on April 16, 2021, after the parties fully briefed the matter, the court entered a judgment that: (i) Trustee Anderson was entitled to the relief sought in her Petition for Enforcement of Parties' Agreement, (ii) Trustee Anderson and co-Trustee Harvey Iverson were ordered to sell the Property to a third-party, and (iii) the costs incurred in selling the Property were to be split evenly between Trustee Anderson and co-Trustee Harvey Iverson together with the proceeds from the sale the Property. (*Id*. at ¶ 41.)

37. Upon further information and belief, the complaint in the Underlying Suit alleges that Trustee Anderson and co-trustee Harvey Iverson sold the Property and distributed the proceeds between themselves. (*Id*. at ¶ 42.)

38. Upon further information and belief, the complaint in the Underlying Suit alleges that, despite the express terms of the Trust, which became irrevocable upon Delores Iverson's

death, the Family Trust was never properly funded and the proceeds of the sale were improperly distributed to Trust Anderson and Harvey Iverson. (*Id*. at ¶ 43.)

39. Upon further information and belief, the complaint asserts five (5) separate causes of action: (1) Declaratory Judgment; (2) Breach of Fiduciary Duty and Duty of Loyalty (Trustee Anderson and co-trustee Harvey Iverson); (3) Breach of Fiduciary Duty and Duty of Loyalty (Trustee Anderson); (4) Breach of Contract (Trustee Anderson and co-trustee Harvey Iverson); (5) Breach of Contract (Trustee Anderson and co-trustee Harvey Iverson); and (6) Removal of Trustees. (*Id*. at ¶¶ 44-97.)

40. Trustee Anderson has demanded that Underwriters provide a defense and indemnification for the Underlying Suit under the Policies.

41. Underwriters dispute that they have any obligation to defend and/or indemnify Trustee Anderson under the Policies in connection with the Underlying Suit.

## **PRIOR CLAIMS AGAINST TRUSTEE ANDERSON**

42. Upon information and belief, on December 11, 2020, Harvey Iverson filed a Motion for Summary Judgment seeking dismissal of Trustee Anderson's Petition of Enforcement of the Parties' Agreement in the *Trust Dispute* Matter. (*See* Motion for Summary Judgment, attached hereto as **Exhibit F**.)

43. Upon further information and belief, the Motion for Summary Judgment included the affidavit of Jeff Iverson alleging that he was a beneficiary of the Trust and that he was not part of the alleged agreement between Trustee Anderson and co-Trustee Harvey Iverson to sell the Property, and further alleged that he would not sign any agreement that did not adequately address his interest in the Trust. (*Id*.)

44. Upon further information and belief, on December 11, 2020, Jeff Iverson filed an Answer Petition for Enforcement of Parties' Agreement in the *Trust Dispute* Matter wherein he alleged he was an interested party in those proceedings, that he had not been included in any negotiations regarding Trustee Anderson's agreement to split the proceeds of the sale of the Property, and that Trustee Anderson needed to include Jeff and Jason Iverson and in any further negotiations regarding the sale of the Property. (*See* Answer, attached hereto as **Exhibit G**.)

45. Upon further information and belief, the Answer Petition for Enforcement of Parties' Agreement filed by Jeff Iverson alleged that he disagreed with Trustee Anderson's claim that there was an agreement between her and co-trustee Harvey Iverson regarding the sale of the Property or that such agreement had been breached. (*Id*.)

46. Upon further information and belief, Jeff Iverson also alleged in the Answer Petition for Enforcement of Parties' Agreement that Trustee Anderson had a legal and fiduciary obligation to inform all beneficiaries to the Trust, including Jeff and Jason Iverson, of any negotiations that Trustee Anderson was involved in and to negotiate terms that reflected the interests of all the beneficiaries to the Trust, and not just that for the benefit of Trustee Anderson. (*Id*.)

47. Upon further information and belief, on December 11, 2020, Jeff Iverson filed a Motion to Remove Anderson Trustee as trustee of the Trust. (*See* Motion to Remove, attached hereto as **Exhibit H**.)

48. Upon further information and belief, the Motion to Remove Anderson Trustee alleged that Jeff Iverson was an interested party in the *Trust Dispute* Matter, that Trustee Anderson's petition to the court seeking a fifty-fifty split of the proceeds of the sale of the Property between Trustee Anderson and Harvey Anderson was "close to grounds of theft of

funds from the other two listed beneficiaries named in the trust agreement," and that Trustee Anderson's proposal to share the proceeds of the sale of the Property exclusively between herself and Harvey Iverson was "a clear violation of her fiduciary duties" to Jeff and Jason Iverson. (*Id.*)

49. Upon further information and belief, the Motion to Remove Anderson Trustee alleged that Trustee Anderson's proposal to split the proceeds from the sale of the Property with co-trustee Harvey Iverson was "a clear violation of the Harvey and Delores Iverson Trust agreement, not to mention embezzlement of funds, or at best theft of funds" from Jeff and Jason Iverson. (*Id.*)

50. Upon further information and belief, the Motion to Remove Anderson Trustee also alleged that Trustee Anderson was "only looking to enrich herself" at the expense of Jeff and Jason Iverson and requested that the court remove Trustee Anderson "for her failure to uphold her fiduciary duties." (*Id.*)

51. Upon further information and belief, the Motion to Remove Anderson Trustee further alleged that Jeff Iverson was entitled $197,400 from the proceeds of the sale of the Property, which amount represented a 35 percent interest in the Trust. (*Id.*)

52. Upon further information and belief, on December 11, 2020, Jeff Iverson filed a document titled, "Claim Against Estate," in the *Trust Dispute* Matter alleging that he was entitled $197,400 as a beneficiary under the terms of the Trust. (*See* Claim Against Estate, attached hereto as **Exhibit I**.)

53. Upon further information and belief, on January 15, 2021, Trustee Anderson filed a document titled, "Response to Jeff Iverson's Miscellaneous Filings" in the *Trust Dispute* Matter, alleging that Jeff Iverson had filed eight separate documents, including a Motion to Dismiss, a Motion to Remove Trustee Anderson, a Claim Against Estate and an Amended Claim

Against Estate seeking a "default" against Trust Anderson, and requesting that Jeff Iverson's various motions be denied. (*See* Response, attached hereto as **Exhibit J**.)

## TENDER OF PREMIUM

54. On May 19, 2022, Trustee Anderson sent email to Underwriters providing notice of the Underlying Suit brought against Trustee Anderson, together with a copy of the complaint.

55. After reviewing the pleadings in the *Trust Dispute* Matter and the Professional Liability Errors and Omissions Insurance application, Underwriters immediately advised Trustee Anderson that it was seeking to rescind the Policies and tendered the full amount of the premiums of the Policies to Trustee Anderson on August 2, 2022. (*See* August 2, 2022 Letter to Trustee Anderson, attached hereto as **Exhibit K**.)

## COUNT I
## BREACH OF THE REPRESENTATIONS CONDITION/RESCISSION

56. Underwriters reassert and incorporate by reference Paragraphs 1 through 55 of this Complaint as if fully set forth herein.

57. The Policies contain the following Representations Condition:

> You warrant that all representations made and all materials submitted by you or on your behalf in connection with the application for this policy are true, accurate, and not misleading, and agree and understand that they were relied on by us and were material to our decision to issue this policy to you. If we learn any of the representations or materials were untrue, inaccurate, or misleading in any material respect, we will have no obligation to make any payments in connection with any claim, event, occurrence, or other covered matter arising from untrue, inaccurate, or misleading facts that were not accurately and completely disclosed in the application.

58. The Policies define the policy term "Application," as follows:

> **Application** means the signed application for the policy and any attachments and materials submitted with that application. If this policy is a renewal or replacement of a previous policy issued by us, application also includes all previous signed applications, attachments, and materials. If a midterm change is

>made by us, application also includes all applications, attachments, and materials submitted in connection with that change.
>
>It is understood and agreed that any information provided in the application is incorporated into, and forms a part of, this policy.

59. Trustee Anderson breached the foregoing Representations Conditions for the following reasons:

(a) In the Application for the Policies, Trustee Anderson falsely represented that she "had no knowledge or information of any act, error or omission which might reasonably be expected to give rise to a claim against her," when four (4) months prior thereto (and perhaps earlier), Jeff Iverson alleged that: (i) Trustee Anderson had improperly negotiated the sale and distribution of Trust Assets to the detriment of beneficiaries Jeff and Jason Iverson, (ii) her conduct in doing so was "close to grounds of theft of funds from the other two listed beneficiaries named in the trust agreement," (iii) that her proposal to share the proceeds of the sale between herself and Harvey Iverson was "a clear violation of her fiduciary duties" to Jeff and Jason Iverson and (iv), ultimately, that Trustee Anderson should be removed as trustee of the Trust due to misconduct.

(b) In the Application for the Policies, Trustee Anderson falsely represented that "After inquiry… [no] claims [have] been made against any proposed Insured(s) during the past five (5) years," when four (4) months prior thereto (and perhaps earlier), Jeff Iverson (i) was disputing that Trustee Anderson had the authority to enter into agreement with co-trustee Harvey Iverson for the sale of the Property, (ii) was asserting that Trustee Anderson had a legal and fiduciary obligation to inform all beneficiaries to the Trust, including Jeff and Jason Iverson, of any negotiations that Trustee Anderson was involved in and to negotiate terms that reflected the interests of all the beneficiaries to the Trust, and not just that for the benefit of Trustee Anderson

and (iii) had asserted a Claim Against Estate and an Amended Claim Against Estate in the Trust Dispute Matter seeking $197,400 as a beneficiary of the Trust.

60. Trustee Anderson knew that her failure to disclose the foregoing information in the Application for the Policies would be relied upon by Underwriters in making their determination to issue the Policies.

61. The foregoing misrepresentations, misstatements, omissions and/or concealments were material in that they affected the risk accepted by Underwriters in issuing the Policies.

62. If Trustee Anderson had disclosed the foregoing information in the Application, Underwriters would not have issued the Policies.

63. Accordingly, Trustee Anderson breached the Policies' Representations Condition, and Underwriters are entitled to rescind the Policies such that they are *void ab initio*.

64. Upon information and belief, Trustee Anderson disputes the applicability of the foregoing defense.

65. There exists between Underwriters and Trustee Anderson an actual, immediate and justiciable dispute regarding whether the Policies provide coverage for the Underlying Suit.

66. Underwriters are therefore entitled to have a declaration of theirs rights and a judicial interpretation of the rights and obligations of the parties under the Policies. There is no adequate remedy, other than that requested herein, by which this controversy may be resolved.

WHEREFORE, Underwriters respectfully pray that this Court:

A. Enter a declaratory judgment holding that the Policies do not provide coverage for the Underlying Suit and/or that the Policies are *void ab initio;*

B. Awarding Underwriters their costs in this action; and

C.     Awarding Underwriters such other and further relief as the Court deems just and proper.

## COUNT II (IN THE ALTERNATIVE)
## NO COVERAGE FOR ACTS PRIOR TO THE RETROACTIVE DATE

67.    Underwriters reassert and incorporate by reference Paragraphs 1 through 66 of this Complaint as if fully set forth herein.

68.    The insuring agreements to the Policies provide, in relevant part:

> **We** will pay up to the **coverage part limit** for **damages** and **claim expenses** in excess of the **retention** for covered **claims** against you alleging a negligent act, error or omission in **your trustee services** performed on or after the **retroactive date**….

69.    The Retroactive Date in the Policies is April 20, 2021.

70.    As such, the Policies only afford coverage for covered claims alleging a negligent act, error or omission in the performance of Trustee Anderson's services that occurred after April 20, 2021.

71.    Upon information and belief, most, if not all, of the alleged acts, errors and/or omissions alleged in the Underlying Suit occurred prior to April 20, 2021 retroactive date and are therefore not covered under the Policies.

WHEREFORE, Underwriters respectfully prays that this Court:

A.     Enter a declaratory judgment holding that the Policies do not provide coverage for the Underlying Suit;

B.     Awarding Underwriters their costs in this action; and

C.     Awarding Underwriters such other and further relief as the Court deems just and proper.

-14-

## COUNT III (IN THE ALTERNATIVE)
## ADDITIONAL DEFENSES UNDER THE POLICIES

72. Underwriters reassert and incorporate by reference Paragraphs 1 through 71 of this Complaint as if fully set forth herein.

73. Underwriters are under no duty to provide Trustee Anderson with a defense and/or indemnity in connection with the Underlying Suit pursuant to the terms, conditions, provisions and exclusions of the Policies as follows:

   a. Coverage is barred under the Policies to the extent Trustee Anderson does not qualify as a Named Insured, Insured, Additional Insured or otherwise under the Policies.

   b. Coverage is barred under the Policies to the extent Trustee Anderson failed to meet and perform all conditions and obligations under the Policies.

   c. Coverage is barred under the Policies by the doctrines of laches, unclean hands, waiver and/or estoppel.

   d. Coverage is barred under the Policies to the extent the claims in the Underlying Suit do not allege or involve acts, errors and/or omissions committed in performance of "your trustee services," as defined in the Policies.

   e. Coverage is barred under the Policies to the extent Underlying Suit does not seek "damages" as defined in the Policies.

   f. Any obligations of Underwriters under the Policies are subject to any deductible contained therein, and Underwriters reserves the right to require that all such deductibles be satisfied and exhausted.

   g. Coverage is limited under the Policies because those Policies contain various limitations on coverage, including without limitation: (i) per Claim and aggregate limits of liability; and (ii) other insurance provisions.

h. Coverage is barred under the Policies to the extent Trustee Anderson has impaired Underwriters' right to recover all or part of any payment Underwriters makes under that Policy from any other party against which Trustee Anderson has any rights to recover.

i. Coverage is barred under the Policies to the extent Trustee Anderson has failed to mitigate, minimize and/or avoid injury or damage.

j. Coverage is barred under the Policies to the extent that any actual or alleged breach of duty or negligent act, error or omission was committed prior to the retroactive date.

k. Coverage is barred under the Policies to the extent that Trustee Anderson had knowledge of any actual or alleged breach of duty or negligent act, error or omission prior to the policy period, and there was a reasonable basis to believe that the act, error or omission could result in a claim.

l. Coverage is barred under the Policies to the extent Trustee Anderson has failed to present Underwriters with sufficient facts to demonstrate that it is entitled to coverage under the Policies.

m. Underwriters reserve the right to assert all defenses which may be pertinent to the Underlying Suit and/or Trustee Anderson's claim(s) for coverage once the precise nature of the claim(s) is/are ascertained through further discovery and investigation.

74. Upon information and belief, Trustee Anderson disputes the applicability of the foregoing defenses.

75. There exists between Underwriters and Trustee Anderson an actual, immediate and justiciable dispute regarding whether the Policies provide coverage for the Underlying Suit.

76. Underwriters are therefore entitled to have a declaration of their rights and a judicial interpretation of the rights and obligations of the parties under the Policies. There is no

adequate remedy, other than that requested herein, by which this controversy may be resolved.

WHEREFORE, Underwriters respectfully pray that this Court:

A.	Enter a declaratory judgment holding that, under the Policies, Underwriters are under no obligation to provide Trustee Anderson with a defense and/or indemnity in connection with the Underlying Suit;

B.	Awarding Underwriters their costs in this action; and

C.	Awarding Underwriters such other and further relief as the Court deems just and proper.

**Certain Underwriters at Lloyd's London Subscribing to Policy No.'s MPL4796207.21 and MPL4796207.22 hereby demand a trial by jury.**

Dated: August 3, 2022				Respectfully submitted,

By:	*/s/ Meredith L. Thielbahr*

Meredith L. Thielbahr
GORDON REES SCULLY MANSUKHANI, LLP
999 W. Main Street, Suite 100
Boise, ID 83702
(208) 489-9095
mthielbahr@grsm.com

**Attorney for Certain Underwriters at Lloyd's, London Subscribing to Policy No.'s MPL4796207.21 and MPL4796207.22**